ELIZABETH CHANDLER AND WILLIAM CHANDLER, an infant, by his next friend THOMAS Y. DE NORMANDIE.

*vs.*

MARY ANN HOLLINGSWORTH, WILLIAN D. NOLEN and MARGARET his wife, ISAAC SOLOMON and SARAH I. his wife and MAGGIE CUMMINGS.

*New Castle, Sept. T., 1867.*

A court of equity will protect a husband against a voluntary conveyance or settlement,by his intended wife,of all her estate, to the exclusion of the husband, made pending an engagement of marriage, without his knowledge, even in the absence of express misrepresentation or deceit, and whether the husband knew of the existence of the property or not.

The wife's right of dower will be protected against the voluntary conveyance of the husband made,pending a marriage engagement,under the same circumstances in which the husband is relieved against an ante-nuptial settlement by the wife.

Such a conveyance is not wholly void, so as to admit the wife to a share of the personal estate of the husband dying intestate or a child of the marriage to take the real estate as heir at law or the personal estate as distributee. The conveyance is valid to pass a title subject to the right of the wife in equity to her dower.

Distinction in this .respect between a conveyance fraudulent in fact and one constructively fraudulent.

BILL TO SET ASIDE A CONVEYANCE MADE IN FRAUD OF MARRIAGE.—William Chandler, deceased; by deed executed three ·days previous to his marriage with the complainant, Elizabeth Chandler, conveyed all his estate, real and personal, upon certain trusts for his own benefit during his lifetime, and after his death to be divided between his three sisters. The bill was filed, after Chandler's decease, by his widow, Elizabeth Chandler, and William Chandler, an infant son, by his next friend, and charged that the conveyance was made pending an engagement of marriage, without the knowledge of the intended wife ; that it was a fraud on her marital rights and void ; that it was void not only so far as to entitle Mrs. Chandler in equity to dower ʹof her husband's real estate, which but for the deed she would have taken at law, but that it was absolutely void, so that she was entitled to such share of his personal estate as but for the deed she would have taken in the result which followed, viz : the death of William Chandler intestate ; and further that a child born of the marriage was let into the same rights which but for the deed he would have held, as heir at law of the real estate and distributee of the personal estate in the event which happened, *i. e.*; the intestacy of the father.

There were very voluminous depositions, upon no point conflicting, except as to the time of the engagement, and with respect to the evidence upon this subject there was much controversy. The evidence and arguments were fully considered by the Court but it is only necessary to state the conclusion reached. In the judgment of the Chancellor, the evidence satisfactorily established the performance of a valid marriage ceremony and that the settlement was a voluntary one made pending a marriage engagement and without the wife's knowledge. It did not appear that the wife knew that the property belonged

to her husband prior to the engagement or had any expectations concerning it, nor was there any evidence of misrepresentation as to his means or as to what was done.

Another ground of relief alleged in the bill was the incapacity of Chandler to make a valid disposition of his property, but this was formally abandoned at the hearing and was therefore laid entirely out of consideration, except that the Chancellor remarked at the time of delivering the opinion that " it was just to observe that the evidence "fully established Chandler's capacity.

*E. G. Bradford* and *Higgins*, for the complainants. ·

The deed was a fraud upon Mrs. Chandler's marital rights. The facts entering into this ground are marriage engagement at the date of the deed, secrecy as concerned the complainant, and the voluntary character of the deed.

A voluntary conveyance in contemplation of marriage not disclosed, is void as against the party affected.

The rule has been generally enforced as to settlements by the wife but applies either way. The reason is the same in both cases. *Strathmore vs. Bowes*, 1 *Ves. Jr.* 22, on appeal to Lord Thurlow from Buller J. in 2 *Bro. C. C.* 345, 2 *Cox C. C.* 28 ; 1 *Wh. & Tud. L. Cas.* (269) ; *England vs. Downes*, 2 *Beav.* 528 ; *Howard vs. Hooker*, 2 *Chanc. Rep.* 81 ; *Carthew vs. Dorset*, 2 *Vern.* 17 commented upon in argument in 2 *Cox* 33 ; *Goddard vs. Snow*, 1 *Russ.* 485 ; *Taylor vs. Pugh*, 1 *Hare*, 608 ; *Lance vs. Norman*, 2 *Chanc. Rep.* 79.

It is after a treaty for marriage, not an actual engagement that the rule applies. *Taylor vs. Pugh.* The American cases are to the same effect. 1 *Wh. & Tud. L. Cas.* (283) ; *Swaine vs. Perrine*, 5 *Johns. Ch.* 482 ; *Petty vs. Petty*, 4 *B. Mon.* 215 ; *Bullard vs. Briggs*, 7 *Pick.* 533.

The reasons for the rule exist more strongly for the protection of the wife than of the husband as she is the weaker sex and surrenders more in marriage. The case

is analogous to that of a marriage settlement vitiated by fraud, and in this respect affects our right as claimed to one-third of the personalty. 1 *Sto. Eq. Jur.* § 268; *Neville vs. Wilkinson*, 1 *Bro. Ch. R.* 543; *Redman vs. Richmond*, 1 *Vern.* 348.

The principle is very broad, that all things should remain as they appeared, the principle of good faith securing confidence in this great transaction, as to all things, personal estate as well as real.

Marriage involves such interests as that it operates to revoke a will, not upon a presumed intention to revoke, but out of regard to the wife and children. *Marston vs. Fox, 8 Ad. & El.* 14; 1 *Williams on Exrs.* 168-172.

Contracts valid as between the parties may be void as to third persons. *Worsely et al. vs. DeMattos et al.* 1 *Burr.* 467; *Cadogan vs. Kennett, Cowp.* 434; *Doe vs. Routledge, Cowp.* 712.

This deed was purely voluntary whereas to be effective the consideration must be valuable. *Doe vs. Routledge, Cowp.* 712; 1 *Am. L. Cas.* 49; *Sexton vs. Wharton, 8 Wheat.* 229.

It should be declared wholly void as an invasion of public policy.

*McCaulley*, for the defendants.

The defendants, if volunteers, are not seeking the aid of this Court. Their rights under the deed are perfect at law, and the trusts are duly created, and, if necessary, equity would enforce them. All property passing under the deed was derived from the father and brother, and the closest relations and affection existed between William Chandler and his three sisters. The circumstances therefore shew the disposal to have been a natural and reasonable one.

The only objection to the deed remaining for discussion is that of fraud upon the rights of complainants. A voluntary deed is not *per se* void, it is good as between the parties and irrevocable. 2 *Blacks. Com.* 297; *Villers vs.*

*Beaumont,* 1 *Vern.* 100 ; *Souverbye vs. Arden et al.,* 1 *Johns. Ch.* 240.

I. With respect to the child the contention of the complainants is that the settlement disappointed the reasonable expectations of the mother that Chandler would not put it out of his power to leave the property by descent or devise to such child as they might have.

The proposition is without authority, and is in itself untenable. The parties must stand on their respective legal rights existing at the time of the transaction. The Court can deal only with rights, not with hopes and aspirations. Children have no legal rights to the property of the parent on his decease as against the parent's right of disposal. There may be a moral obligation of the parent to provide for children surviving, but it is an imperfect obligation, which the law does not undertake to enforce, and is entrusted to natural affection. *Reichart vs. Castator,* 5 *Binn.* 112.

The whole right of a child rests on the intestate law, subject to the parent's right of disposal, and is dependent on two conditions, seisin at death and the absence of a devise. The power of disposition is absolute either by will or deed whether voluntary or for a consideration.

This power of disposal not being subject to consent of wife or child (except as to an existing right of dower) cannot be subject to the consent of an intended wife. With the propriety or wisdom of the deed, if Chandler was capable, the Court has nothing to do. 1 *Sto. Eq. Jur.* § 244.

No actual fraud is charged and none will be presumed. What is charged is concealment, and since a man is not bound to disclose a disposal of property to his wife after marriage, *a fortiori* he is not before. Even a marriage settlement would not set aside the deed and surely the Chancellor should not be expected to do it.

The rule that solemn conveyances can never be set aside for want of human foresight applies here. *Middleton vs. Ld. Kenyon,* 2 *Ves. Jr.* 412.

II. As to the interest of the wife, her right to be protected must be a legal right, not mere expectation. The legal rights acquired by marriage are maintenance, and dower out of lands of which the husband is seized during coverture and not prior to it.

We deny the analogy of the claim of a wife to that of the husband under the cases cited. They proceed upon the ground of fraud committed and lay down no general rule but leave each case to be determined according to its own circumstances. Even the general doctrine is questioned except when actual fraud is committed. *Atherby on Mar. Set.* 319, 322. The husband acquires by marriage absolute and immediate rights of property and assumes grave obligations, while the wife acquires, at the time of marriage, no legal rights of property but a contingent and insignificant right of dower.

A husband under treaty of marriage has not only general power of disposal of his property but may do it specially to bar dower, and this has been sanctioned by the Courts. *Ather. on Mar. Set.* 323, 326; *Banks vs. Sutton,* 2 *P. Wms.* 707; *Roper on H. & W.,* (354) *note n; Exparte Bell,* 1 *Glyn & J.* 282; *Swannar vs. Lifford, Co. Litt.* 208, *note* 1.

But if the doctrine be admitted the evidence fails to shew a marriage engagement at the date of the deed. It must be proved as a contract. There must be reciprocal promises. *Add. on Cont.* 676. Mere visits and expressions of intention to third persons are not sufficient. 8 *C. & P.* 75. Nor does the marriage prove an engagement or raise any arbitary presumption of the existence of one three days before.

But if the doctrine be established and the proof sufficient the measure of relief is the extent of the injury only. The deed may be held partly valid and partly invalid. Such is the distinction between constructive and actual fraud, the latter alone vitiating the whole instrument.    1

*Sto. Eq. Jur.* § 258. The relief therefore, if any, would be to allow dower, that being the only right defeated by the deed. 3 *L. Cas. in Eq.* 1156; *note to Huguenin vs. Basely*; *Bredins Case*, 1 *Rep.* 76; *Sheph. Touchst.* (68); *Sugden Law of Prop.* (148); *Doe vs. Pitcher et al.*, 6 *Taunt*, 356; *Darling vs. Rogers*, 22 *Wend.* 483.

THE CHANCELLOR :—

The case presented for relief is this—William Chandler three days before his marriage with the complainant, Elizabeth Chandler; while under an engagement of marriage with her, made a voluntary conveyance of all his estate, real and personal, thereby, if it be allowed to operate, defeating the right of dower which otherwise would have accrued from the marriage, and also withdrawing from his own control the means he then had whereby provision might be made for his intended wife and the issue of the marriage, either through a will or by law in case of his dying intestate. This conveyance was made without notice to her, and as we must take it, without her knowledge derived in any way whatever before the marriage. Yet no misrepresentation as to his means appears; nor any positive deception as to what was done beyond simple non-disclosure. Nor are we to consider it as an element in the case that Mrs. Chandler before the engagement knew that Chandler had held this property or that she had formed any expectations with regard to it.

We may now take the legal question presented by such a case. Will a court of equity relieve against a voluntary conveyance by the husband of all his estate made pending an engagement; or, as the English cases term it, pending a treaty of marriage made without any disclosure to the intended wife or knowledge on her part, though without any express misrepresentation or deception practiced by the husband? This is the general question; but it is to be considered in two forms :—

1. Will equity relieve, at least so far as to save to the wife her dower in the real estate, even though the conveyance must stand as it affects the personal estate and also the real estate, except as this may be subject to dower?

2. Will equity go further and set aside the deed *wholly*, thereby admitting to take effect the same consequences which would have followed if no such deed had been executed, so that, as Chandler in fact died intestate, the whole property shall descend or be distributed as in ordinary cases of intestacy?

Either form of relief will give Mrs. Chandler her dower. On the latter depends her claim to a share of the personal estate, and the claim on behalf of the infant complainant as heir at law and distributee.

I. Let us consider the first question. The English Court of Chancery has, from the earliest times, protected the marital rights of the *husband* against a fraudulent settlement by the wife pending a treaty of marriage. It is considered that he becomes a purchaser of the wife's property, in consideration of the charge he assumes of her maintenance and the payment of her debts ; that this is a right upon which fraud may be committed and which ought to be protected. Lord Thurlow, in *Strathmore vs. Bowes,* 1 *Ves. Jr.* 27. This view has commanded universal consent from the beginning. But until a recent date the doubt has been as to what circumstances should be held to render the settlement fraudulent; whether there must have been some misrepresentation or deception practised upon the husband, such as amounts to *actual fraud,* or whether mere non-disclosure was sufficient as a *fraud in law* to invalidate the settlement ; especially whether mere non-disclosure should be fatal where the husband was at the time of the marriage ignorant as well of his wife's having held the property as of its having been disposed of away from him.

Opinion :—cases of relief to the husband.

The first full examination of this subject was in *Strathmore vs. Bowes*, decided in 1789. That was a bill filed by Bowes, the husband, to set aside a settlement made before marriage by his wife, the Countess of Strathmore. There was also a cross-bill filed by the wife to set aside a deed revoking the settlement, on the ground of duress by the husband in obtaining it from her. First, upon an issue directed to inquire whether the deed of revocation was obtained by the duress, and a verdict so finding, that deed was set aside. 2 *Bro. C. C.* 345. Then, the cause came to be heard upon the bill to set aside the settlement, before Justice Buller, sitting for the Lord Chancellor. He decreed in favor of Lady Strathmore. Upon a rehearing before Lord Chancellor Thurlow, the decree was affirmed ; and, finally, it was affirmed again on appeal to the House of Lords. The argument before Justice Buller and his opinion are reported in 2 *Cox* 28. The rehearing before the Lord Chancellor, with his opinion, are reported both in *Cox* and in 1 *Ves. Jr.* 22. Upon the rehearing, the arguments are best reported in *Vesey*, but the opinion of Lord Thurlow, in *Cox*. As a decision the case is of no importance upon the question before us, since the settlement made by Lady Strathmore was not a fraud upon the marital rights of her husband under any, the most liberal, construction of frand. It was made before she knew Bowes, her future husband, even pending a treaty of marriage with another man and with his consent : and her marriage to Bowes was itself obtained by a gross fraud on his part. But the case is valuable as containing a full review of all the prior decisions. Justice Buller considered that the decisions had gone only so far as to relieve the husband in cases of some actual fraud practised upon him, and he so lays down the rule. The result, he says, is "that if the wife is guilty of any fraud "and holds out to the husband that there is nothing to "interfere with his rights, then any deed executed by her "in prejudice of such representation shall be void." Bare

concealment he held not to be sufficient: 2 *Cox* 30. Lord Thurlow, though it did not affect the result of that case, seems to have held to the more liberal construction of frauds, which includes concealment as well as positive misrepresentation. In his opinion,(1 *Ves. Jr.* 28,) he says, "if a woman, during the course of a treaty of marriage "with her, makes, *without notice to the intended husband*, a "conveyance of any part of her property I should set it "aside, though good *prima facie*, because affected *with* "*that fraud*." It is true, according to Justice Buller's view, that the early decisions were upon cases of actual misrepresentation or deception, but it is also true that the distinct question whether bare concealment was itself fraud had never before been raised ; and, therefore, the cases prior to that of *Strathmore vs. Bowes* are to be considered rather as presenting examples of fraud, as they occurred in fact, than as deciding in what fraud on marital rights must consist so as to limit the construction of it. Lord Thurlow must so have regarded them in laying down his view of fraud in terms more comprehensive than Justice Buller had done ; embracing in his definition mere concealment, which Justice Buller had expressly excluded. The later decisions in England and America have sanctioned the view of Lord Thurlow.

The first of these is *Goddard vs. Snow*, 1 *Russ.* 485, decided by Lord Gifford, Master of the Rolls, in 1826. In that case, the wife, ten months before her marriage, settled to her separate use for her life, and subject to her appointment after her death, two sums of money, 900*l.* in all, being not the whole of her estate. Her intended husband was ignorant both of her possession of the funds and of the settlement made of them, and so continued until after her death, when he filed his bill to set aside the settlement as one made in fraud of his marital rights. No actual misrepresentation was alleged, nor deception other than was implied in the concealment. Here the precise question was presented, whether bare concealment was in

itself a fraud. In the argument and decision of this case, *Strathmore vs. Bowes* was fully reviwed, and the opinions of Justice Buller and Lord Thurlow considered. Concealment alone was held to be a fraud and the settlement was set aside.

Next, is a case in which the subject is considered by Lord Brougham, though the decision went upon other grounds ; *St. George vs. Wake,* 1 *Myl. & K.* 610 (7 *Eng. Ch. Rep.*) Lord. Brougham raises the question, and, upon a review of the cases, says ; that in none, except *Goddard vs. Snow,* had there been a positive decision avoiding a settlement by the wife on the mere ground of want of knowledge by the husband. "Yet," he proceeds to say, "it is cer-"tain that all the cases, in which the subject is approached, "treat the principle as one of undoubted acceptance in "this Court ; *and it must be held to be the rule of the Court,* "to be gathered from a uniform current of *dicta,* though "resting upon a very slender foundation of actual decision "touching the simple point." This was in 1833.

In *England vs. Downs,* 2 *Beav.* 522 (27 *Eng. Ch. Rep.*) 1840, in which the question concerned the validity of a settlement made by a widow upon children of a former marriage before a second marriage, the Master of the Rolls, Lord Langdale, considered it not sufficiently proved that the settlement was made *pending a treaty of marriage ;* or, if so, *that it was concealed up to the time of the marriage ;* and, on these grounds, he sustained the settlement ; but he states the law quite fully on the point before us, and clearly in accordance with *Goddard vs. Snow,* that mere concealment is sufficient to avoid an ante-nuptial settlement by the wife. He adds a qualification, not necessary to be here considered, viz., that the concealment is evidence of fraud, rather than fraud *per se,* and, therefore, is open to explanation ; so that cases may occur in which non-communication would not be held fraudulent.

Next, is *Taylor vs. Pugh,* 1 *Hare* 608 (23 *Eng. Ch. Rep.*) 1842. In this case, a settlement made before mar-

riage, to the exclusion of the husband, was sustained on the special ground that the husband had previously seduced the woman, thus putting her in a situation in which she must submit to a marriage without being able to stipulate for a settlement out of her own property. In his opinion, the Vice-Chancellor, Sir James Wigram, notices, with strong disapproval, the argument, that to avoid such an ante-nuptial settlement by a wife, without the intended husband's knowledge, actual fraud or deception must be proved; and he cites as the true rule, a statement from 2 *Roper on Husband and Wife* 162, that "deception will be inferred if after the commencement of the treaty for marriage, the wife should attempt to make any disposition of her property *without her intended husband's knowledge* or concurrence."

It is true that the cases cited subsequent to that of *Goddard vs. Snow*, give only the *dicta* of judges in support of the rule of that case; but they show, at least, a concurrent judicial opinion, from that case down, in favor of the rule which holds mere concealment to be, at least, evidence of fraud. The real doubt has been whether the concealment should, in all cases *per se*, avoid the settlement, or whether a settlement not disclosed to the husband, might, nevertheless, be sustained upon such equitable considerations, as the meritorious character of the objects provided for, such as children of a former marriage; *Hunt vs. Matthews*, 1 *Vern.* 408; *King vs. Cotton*, 2 *P. Wms.* 675; so the poverty of the husband and his inability to make any settlement upon his wife; *King vs. Cotton*, *supra*; *St. George vs. Wake*, 1 *Myl. & K.* 610 (7 *Eng. Ch. Rep.*); so the fact that the settlement is of *part only* of the wife's property, which was the ground in *DeMandeville vs. Crompton*, 1 *V. & B.* 352.

The only equitable consideration relied upon in the pending case was that Mrs. Chandler, as we must assume, had no knowledge that William Chandler had held the property in controversy; and hence, the expectation of it

could not have been an inducement to the marriage. But this circumstance is certainly immaterial. The true ground of relief is not *the disappointment of an expectation*, but *fraud upon a legal right*, that is, the right to a marriage without any secret alteration of the circumstances of the parties as they stood at the time of the engagement. The husband's ignorance of the property settled, though urged in *Goddard vs. Snow* and *Taylor vs. Pugh*, as a ground for sustaining the settlement, was expressly overruled and was disapproved in *England vs. Downs*. In the latter case Lord LANGDALE says: "if both the property and "the mode of its conveyance pending the marriage treaty "were concealed from the intended husband, as was the "case in *Goddard vs. Snow*, there is still a fraud practiced "on the husband. The non-acquisition of property of which "he had no notice is no disappointment ; but still his legal "right to property actually existing is defeated, and the "vesting and continuance of a separate power in his wife "over property which ought to have been his, and which "is without his consent made independent of his control, "is a surprise upon him and might if previously known "have induced him to abstain from the marriage." In *Taylor vs. Pugh*, the same consideration was rejected by the Vice-Chancellor ; and he reasoned with great force, that no equitable considerations arising out of the circumstances of the particular case, such as those before referred to, shall excuse a concealment from the husband or sustain a settlement made without his knowledge.

In this country the ignorance of the husband of a settlement by the wife pending a treaty of marriage has of itself been uniformly held fatal to the settlement, though no actual misrepresentation or deceit might appear. The cases are collected in 1 *White & Tudor's Leading Cases*, 317. See, especially, *Linker vs. Smith*, 4 *Wash. C. C.* 224 ; *Tucker vs. Andrews*, 13 *Me.* 124 ; *Logan vs. Simmons*, 3 *Ired. Eq.* 487 ; *Spencer vs. Spencer*, 3 *Jones Eq.* 404, 409 ; *Poston vs. Gillespie*, 5 *Id.* 253 ; *Ramsay vs.*

*Joyce*, 1 *McMullan Eq.* 236 ; (in which latter case an issue was directed to the single question whether the husband *had knowledge* of the settlement ;) and *Manes vs. Durant*, 2 *Rich.* Eq. 403. In North and South Carolina the whole subject of fraud on marital rights has been examined in a series of cases contemporaneous with the later English decisions and without reference to them, but reaching the same conclusion, viz, that no ante-nuptial settlement by the wife can be valid if made without the husband's knowledge ; it matters not how meritorious may be the objects provided for by the wife, or what may be the circumstances of the husband. He is considered as having rights springing out of the treaty of marriage, not to be controlled by any equitable considerations between the wife and third persons. And in North Carolina the result reached by frequent investigations of the subject has been to establish a rule requiring, in order to sustain a settlement by the wife, not only that the husband have general knowledge of her intention to make one or that she has done so, but requiring his consent to the very act or instrument by which the settlement is made. *Spencer vs. Spencer*, 3 *Jones* Eq. 409 ; *Poston vs. Gillespie*, 5 *Id.* 262.

We see then, both in England and in this country, since the decision of *Strathmore vs. Bowes*, and the cases prior to it, the course of judicial opinion has tended more and more to strengthen the protection of marital rights against settlements made to their prejudice ; (1st) by enlarging the ground of invalidity. This originally was only actual fraud, evidenced by positive misrepresentation or deceit ; but now it includes also constructive fraud, such as arises from mere non-disclosure ; and (2d) by excluding all the exceptions founded on equitable considerations in the particular case, which were originally allowed to support such settlements ; thus making in all cases the husband's *knowledge*, *at least*, and in some Courts his *positive assent* essential to the validity of a conveyance or settlement made after an engagement to marry.

Now, wishing to lay down a rule only for the case presented, it is enough to say that this Court will protect a husband against a voluntary conveyance or settlement by the wife of *all* her estate, to the exclusion of her husband, made pending an engagement of marriage, without his knowledge prior to the marriage, even in the absence of express misrepresentation or deceit, and whether the husband knew of the existence of the property or not. The concealment of what it is the right of the husband to know, and what it is the duty of the wife to disclose, is itself fraud in law. It is a doctrine of equity, not so fully developed at the date of *Strathmore vs. Bowes,* as now, that the concealment, to the prejudice of another party with whom one is dealing, of facts which, if known to him, might affect his decision, and which there is an obligation arising out of the transaction to disclose, is a fraud. It is so treated in equity without respect to the motive of the party in the concealment, being what is termed a *constructive fraud.* But, whether a conveyance or settlement made under the circumstances I have stated is *always* void, or whether it may be sustained upon such equitable considerations as were admitted in the earlier English cases, and in *St. George vs. Wake,* 1 *Myl. & K.* 610, such as the reasonableness of its provisions as being made for children of a former marriage, or its embracing only a part of the wife's estate, or such as the husband's inability to make a settlement upon the wife, I leave as questions open in this state until they arise judicially.

We now reach a question which was discussed with much earnestness and ability on both sides. Will equity extend to the wife the like protection against an antenuptial conveyance by her husband which we have seen it affords to the husband against her?

After a patient examination of the argument and authorities, I find no just ground of discrimination against the wife. First, dower is a *right of property*, and, as such, a proper subject of protection : indeed, a right above

all other rights of property favored. Again, dower is a *marital right*, as well as is the husband's interest in the wife's property. Protection, maintenance and dower are the rights inuring to her from the marriage ; and though her dower is inchoate only until the husband's death, it is none the less, in his lifetime, a legal right, vested and indefeasible, except by her own act. This is so far recognized, that a release of it by the wife is held a sufficient consideration to support a post-nuptial settlement upon her, and to make it available, if *bona fide*, against the husband's creditors : *Atherley on Mar. Sett.*(27 *Law. Lib.*) 162 ; *Bullard vs. Briggs*, 7 *Pick.* 533. Again, the wife is a *purchaser* of her marital rights : as much so as is the husband. She takes them for a consideration, rendered by her in the marriage ; a consideration not, indeed, the same in kind as that rendered by the husband for his marital rights, but, considering all the consequences involved in marriage, what the wife surrenders is in value or measure more, certainly not less, than what she receives. She surrenders her person, her services, her self-control, her means of self-support ; and, as to property, far more than the interest she acquires. However, it should be said, that whether the wife's dower, as well as the husband's interest in her estate, is to be protected against fraud, depends not at all upon such considerations as the comparative value of the consideration rendered by each, or the value of their respective rights, but solely upon the fact that there exists a *marital right*, which, in common with all legal rights, is a proper subject of legal protection, whether it be itself of more or less value, or whether it spring from a larger or less consideration rendered. If there could be any ground, in addition to the mere existence of a right defrauded, to evoke a swifter interposition for one sex rather than the other, it would be the consideration that the wife, being of the weaker sex, the more needs legal protection.

It was argued by the defendant's counsel that, in England, dower is not protected as a marital right against

a conveyance by the husband before the marriage, even though made on the eve of marriage and expressly to exclude the wife ; that under thc English decisions, the husband and wife, in this respect, stand on a different footing. There is no decision upon the precise question ; but the weight of opinion is in favor of the position taken. Prior to the Statute of Uses, estates were largely held in trust ; and it was,from the beginning,considered that dower did not attach to a use, even when it was one reserved to the husband under a conveyance made by himself. Whether a conveyance with a use reserved to himself by the husband, made on the eve of marriage and with the express purpose of barring dower, was, at that period, held to be effectual, does not appear by any decided case. The case *Ex parte Bell*, 1 *Glyn & J.* 282, cited in 1 *Roper on Hus. and Wife* (32 *Law Lib.*) 354 *n.*, that a voluntary settlement made by the husband, though set aside as fraudulent against creditors, prevents his wife's right of dower, cannot be taken as a decision upon the question, since it does not appear whether the settlement was made pending a marriage treaty. The *dicta* on this point are conflicting. Lord Chief Baron Gilbert is reported to have said that such a conveyance would be fraudulent as to the wife : 4 *Cruise's Dig.* 416 ; 1 *Roper on Husband and Wife* (32 *Law Lib.*) 354 *n.* In 1 *Cruise*, 411, and in 4 *Cruise*, 416, it is laid down that a secret conveyance by the husband, in trust before marriage, to defeat dower, is void ; and the whole doctrine as to ante-nuptial settlements by the wife is expressly applied to conveyances by the husband made under like circumstances. On the other hand, Lord Hardwicke, in *Wannock vs. Lifford, Co. Litt.* 208 *a*, note 1, also reported fully in *Park on. Dower* 382, treats it as admitted, "that " if a man before marriage conveys his estate privately, "without the knowledge of his wife, to trustees in trust for " himself and his heirs in fee, that will prevent dower." Upon this authority, *Park on Dower*, 236, so lays down the rule. So, also, does 1 *Washburn on Real Prop.* 161. After

the Statute of Uses, which converted all uses into legal estates, and so admitted dower to attach to them, another mode of avoiding the inconveniences of dower was resorted to by the practice of settling jointures in lieu of dower. By a statute of Henry VIII., which was passed to remedy the inconvenient effect of the Statute of Uses as to dower, the husband was authorized to settle upon his intended wife, before the marriage, a jointure, which, if reasonable, was held effectual as an equivalent for dower and barred it, even though made without the wife's privity, the courts of equity reserving the power to relieve the wife against a jointure unfair or merely illusory. Such, after much controversy, was the construction finally given to this statute in *Dury vs. Dury*, 3 *Bro. Parl. Cas.* 492, cited in 1 *Roper*, 477. The effect was that dower under the English system became a precarious, and, in the case of large estates, an infrequent, mode of provision for the wife ; and, hence, its value as a marital right, and the importance of protecting it was the less appreciated. Marriage was not presumed to have been contracted in expectation of it, unless upon representations to the wife that she would become entitled to it. This may account for what, otherwise, must appear as an unjust discrimination made by the English courts of equity, in withholding from the wife such protection as is given to the husband against secret antenuptial settlements. Such a reason is suggested in the note to 1 *Roper*, 354. But, in this country, clearly the same reasons do not apply. Her dower is the only provision made by law for the wife out of the husband's real estate. Practically it is a most important resource, and the only form of provision out of real estate enjoyed by her, except under wills. It does, in fact, to a large extent, enter into the wife's expectations in contracting marriage, and properly so. It, therefore, ought to receive all the protection accorded to any marital right : to refuse it would, in this country, where jointures are unknown, render the right of dower precarious, if not wholly illusory.

In none of the American cases has this subject been thoroughly examined ; but so far as they have gone, they treat the wife's marital rights and their claim to protection, as being on the same footing with those of the husband. In *Swaine vs. Perine*, 5 *Johns. Ch.* 482, a conveyance was made by a husband before marriage with a view to defeat the wife's dower ; the deed was to his daughter, was kept concealed for many years and possession did not go with it. After the husband's death the widow filed her bill for dower, and it was decreed to her, the deed being adjudged fraudulent as against her. It is true, that in a previous suit, the deed had been held void as against a mortgagee claiming under a mortgage subsequent in date to the deed ; but the widow was admitted to her dower not at all in consequence of the decree previously made, that the deed was void as against the mortgagee. It was expressly declared to be fraudulent as against her also ; and she would have been relieved quite as certainly, had there been no previous controversy between the husband's representatives and another party touching the deed. It is also true that this was treated by the Chancellor as a case of fraud *in fact.* It is, then, an authority for the relief of the wife against an ante-nuptial conveyance by the husband, fraudulent *in fact ;* but whether she should be relieved against a conveyance on the ground of mere non-disclosure is a question not decided in *Swaine vs. Perine.*

To the same extent precisely is the ruling of *Petty vs. Petty*, 4 *B. Mon.* 215. In that case a settlement by the husband on the eve of marriage, of all his property upon his children by a former marriage, was declared void, so far as it affected the wife's dower in the real estate. It was a case of fraud *in fact* very gross in its circumstances, being in violation of express representations made to the wife before marriage in order to induce her consent. This case, like *Swaine vs. Perine,* decides nothing as to the effect of mere concealment. It is, however, in one of its features, a valuable recognition of the meritorious character

of dower as a marital right, and of its claim to legal protection ; for the wife was relieved upon a bill filed *in her husband's lifetime*, while her dower was inchoate only, the deed being adjudged void lest it should, through delay, become an impediment to her right of dower in the event of her surviving the husband.

Now, although in *Swaine vs. Perine*, and *Petty vs. Petty*, relief was given against fraud *in fact*, yet in weighing the effect of these decisions upon the case before us, this is to be considered. They recognize the wife's dower to be a marital right, and as such a proper subject of protection in equity against a fraudulent ante-nuptial conveyance ; placing it upon an equal footing in this respect with the husband's marital rights. Then, with respect to the sort of fraud against which she should be relieved ; whether it must be only what is termed fraud *in fact*, or whether she should be protected against *constructive fraud*, such as bare concealment, the same rule must apply in her favor, which, we have already seen, has become settled for the husband's protection,viz., that constructive, as well as actual, fraud will invalidate an ante-nuptial conveyance.

Two cases, at least, have carried the protection of the wife thus far ; one is *Cranson vs. Cranson*, 4 *Mich.* 230. A husband, two weeks before his marriage, made a voluntary conveyance of his lands to his sons, with the design to exclude his intended wife. There was no misrepresentation to the wife, no positive deception ; it was a case of mere concealment. The deed was held void on two distinct grounds, viz., the absence of a sufficient delivery, and also that, "being executed secretly, for the purpose "of cutting off the wife's dower, it was a fraud in law upon "her rights accrued directly from the marriage." The other case of this class is *Smith vs. Smith*, 2 *Halst. Ch. Rep.* 515. A husband, on the day of the marriage, but before it, without the wife's knowledge, settled property upon himself and a daughter by a former marriage, with

intent to defeat dower. Actual misrepresentation was alleged by the bill, but denied by the answer ; no proof to that effect appears, and the decision does not rest upon any such feature ; but the Chancellor assumes the broad ground that "a voluntary conveyance by a man on the "eve of marriage, *unknown to the intended wife*, and made ": for the purpose of defeating the interest which she would "acquire by the marriage in his estate, is fraudulent as "against her. I see no sound distinction (he adds) between "this case and the like conveyance by a woman under the "like circumstances."

In 1 *Scribner on Dower*, 561, there are cited, to the same point, *Littleton vs. Littleton*, 1 *Dev. & Bat.* 327, and *Rowland vs. Rowland*, 2 *Sneed* 543 ; but these cases I have not seen. Scribner refers to the American decisions as "not being entirely uniform ;" and in 1 *Washburn on Real Property*, 175, it is said that "the cases are singularly "conflicting." On examination of the cases, I find no conflict whatever as to the power of a court of equity to relieve the wife. It is only in courts of law where a legal seisin is essential to dower, that the claim to it against the husband's conveyance prior to marriage has been denied, as in *Baker vs. Chase*, 6 *Hill*, 482. The other cases cited in Washburn as against the doctrine of *Swaine vs. Perine*, is *Jenny vs. Jenny*, 24 *Vt.* 324. I have examined this case and think it not relevant to the question, though, not having it by me, I cannot state its circumstances. The rule to be derived from the equity decisions is, that the wife's dower will be protected against a voluntary conveyance of the husband, made pending a marriage engagement, under precisely the same circumstances in which the husband is relieved against an ante-nuptial settlement by the wife.

I am, therefore, of opinion that Mrs. Chandler is entitled to dower out of the real estate described in the deed of trust, notwithstanding the execution of the deed

before her marriage, together with one-third of the rents and profits accrued since her husband's death. It appears, from the answer, that part of the real estate, a lot in Wilmington, has been sold by the trustees for $400, its value. Assuming, as it is proper to do, that the purchaser was a *bona fide* purchaser, without notice, the Court will not follow this lot into his hands ; but the widow is, nevertheless, entitled as against the defendants, to an assignment of such a share of the remaining real estate as she would have taken if the lot had remained in their hands ; and, therefore, in assigning the dower, although it will be assigned only out of the remaining real estate, yet in estimating her share of that, the whole real estate, including the lot sold, will be considered.

II. It now remains to consider briefly the claim of the complainants to relief beyond the allowance of dower to the widow. The prayer is, that the trust deed be declared *wholly void;* so that the real estate may descend under the intestate law, and the personal estate be distributed precisely as if no deed had been executed. This relief the court cannot decree.

A court of equity will not interfere to set aside a voluntary conveyance, because the conveyance disappoints hopes or expectations, however just and reasonable ; not even because it violates obligations, if they are only natural or moral ones. Courts of equity, as well as of law, protect only legal rights and enforce legal obligations ; legal, I mean, as distinguished from such as are merely *natural or moral.* For example, a promise, however solemnly made and binding in morals, if without a consideration, is not enforced in equity any more than at law ; nor is the obligation of a parent to provide for children after his death. So, a conveyance will be set aside on the ground of fraud, only when it is in fraud of some legal right and one existing at the time it is made. Now, in this case, we may waive the fact that, as to the infant complainant, he was not *in esse* at the execution of the trust

deed.   It is a consideration decisive of the whole of this branch of the case, that even had William Chandler not conveyed his estate, his marriage would have vested no rights in it, nor have restricted his absolute control of it beyond the wife's dower in the real estate.   He could, *after* marriage, have effectually disposed of his whole personal estate and of the inheritance of his real estate by just such a trust deed as this.   It follows that his control of the property could not be less absolute *before* the marriage than *after* it ; for, otherwise, an engagement to marry would be of more force than marriage itself.   Besides, as any disposal of property before marriage, which he could as freely have made after marriage, defeated no right, but removed only a bare chance that the complainants might succeed to it if Chandler should continue to hold it and die intestate, the loss of such a chance cannot be treated as the disappointment of a just and reasonable expectation in marriage, nor as so altering the circumstances of the husband as to have influenced the decision of the intended wife.   Again, it is clear that this deed would have stood against any attempt by Chandler to dispose of the personal estate and the inheritance of the real estate by another deed or by will.   That he made no such attempt, but died intestate, so that, as it happened, these complainants would have succeeded to the whole property, but for this deed, cannot affect the deed.   A conveyance can be set aside only for causes affecting it when it is made, as for fraud then committed, or for the protection of rights then existing ; its validity cannot be held in suspense, to be determined by future contingencies. This would subject titles to a distressing uncertainty.

But it was argued, for the complainants, that the deed being fraudulent in respect to dower is, therefore, *wholly void*, passing no title whatever ; so that the heir at law may succeed to the real estate and the distributees to the personal estate as a consequence of the fraud on the right of dower, though they themselves might have no equity

to set the deed aside.  Such would be the effect if the deed were *illegal*; as where it violates the provisions of a statute which avoids the deed itself; it is then a nullity and stands in the way of no claim which otherwise would be valid.  And so, where a conveyance is tainted with fraud *in fact*, in which the parties claiming under it are implicated, such a conveyance is *wholly void*; for no effect whatever can be given to an instrument actually fraudulent ; and, therefore, it is that, although a conveyance which is merely voluntary and not fraudulent in fact, is invalid only against *existing* creditors and not against *subsequent* creditors; yet if the conveyance is tainted with actual fraud, it is void altogether and subsequent creditors are let in.  But such is not the effect of *constructive* fraud.  The object of the doctrine of constructive fraud is, to protect some right or interest, which, in equity, ought to be preserved, against the effect of a conveyance which is in other respects valid ; and, therefore, equity does not avoid the deed altogether, but saves against it the rights or interests which are to be protected.  A deed containing some provisions or having some operation forbidden by statute or public policy, or contrary, as in this case, to some equity, is held invalid only so far as the statute or policy or equity requires, upon the principle *ut res magis valeat quam pereat* : *Bredin's Case*, 1 *Rep.* 76 , *Shep. Touch.* 68 ; *Doe vs. Pitcher*, 6 *Taunt.* 359 ; *Darling vs. Rogers*, 22 *Wend.* 483.  Thus, a voluntary conveyance, if not fraudulent in fact, passes the title to the grantee, but subject to the rights of existing creditors, which are preserved by raising an implied trust in the grantee.  See 1 *Story Eq. Jur.*, *sect.* 371.  So in this case the trust deed is effectual between the parties, but equity preserves the right of dower against the real estate in the hands of the grantees ; precisely as at law, dower follows real estate conveyed by the husband *after* the marriage, though the conveyance is otherwise good.  It does not seem accurate to say that a deed is *void* for constructive fraud.  The deed is valid ;

Opinion :—conclusion.

title under it passes, but subject in equity to those rights which are affected by the fraud.

Decree for complainant, Mrs. Chandler, in accordance with the foregoing opinion.

NOTE.—This case has been very much commented upon, and always with approval; and seems to have been accepted as a satisfactory exposition of the law upon this important subject. Washburn, (3 *Law of Real Property,*) says of it : " An important, and what must be, when published, a leading case upon the " subject of voluntary conveyances has recently been decided by BATES, CHAN- " CELLOR, in Delaware, in which the question was, whether equity would " interpose and set aside a voluntary conveyance of his estate, made by a man in " contemplation of marriage and while under marriage engagement.

" The Chancellor goes fully, and with discrimination, into the consideration " of the English and American cases, and comes to a clear and satisfactory con- " clusion that for a man or woman, on the eve of marriage, to convey away his " or her estate, (in this case it was the entire property of the husband) if done " without a valuable consideration, and not disclosed to the other party before the " marriage, would be so far a fraud *per se* upon the marital rights of the other " party, that equity would set it aside, so far as it conflicted with these rights, " although the party so defrauded, did not know whether the person he or she " was about to marry, had been possessed of the property in question or not. In " that case, the husband having died, the widow and children applied to have " the voluntary conveyance made by him in trust for himself for life, and after his " death to go to his sisters, set aside in their favor. The Chancellor held the " conveyance void as to her right of dower, but binding upon his children and " heirs, and decreed accordingly."

Bishop, in 2 *Law of Married Women* § 343, *note* 2, referring to this case, says; " I understand that the case may be published hereafter in a series of " reports; but as it is not now accessible to the professional public, I trust to be " excused if I make an extract of considerable length, from the particularly " able and exhaustive opinion of the Chancellor, Hon. Daniel M. Bates." He then proceeds to quote from the opinion, as here reported, nearly eight pages.

The case is also reported in 17 *Am. Law Reg. (N. S.)* 319.

Since the case of *Chandler vs. Hollingsworth* was decided, the same princi- ple has been adjudged by VAN VORST, J., in the Supreme Court of New York, in February 1875, in *Youngs vs. Carter & Youngs*, and affirmed on appeal. The decision was that "a conveyance of property made by a husband before marriage, " for no consideration other than that of filial affection, is fraudulent as against " the inchoate right of dower of his wife, and is, therefore, void so far as such " right is concerned."