Minshall, J.
The plaintiff below as appears from lier amended petition, being the widow of John Ward, deceased, brought suit to set aside certain antenuptial deeds that had been made by her husband to his children by a former wife, and to be endowed in the lands, on the ground that the conveyances were voluntary and in fraud of her rights as a wife, she being without knowledge of the facts at the time of the marriage. The case was appealed to the circuit court and there decided in favor of the plaintiff. There is no finding of facts, the finding being simply in favor of the plaintiff and that she is entitled to dower in the land. But a bill of exceptions was taken containing all the evidence and made part of the record. The material facts are, however, not in dispute. Prior to November 18, 1892, John Ward, a widower, living in-Rich- *126 land county, Ohio, was the owner of 106 acres of land, which he had acquired during the life of his first wife. He had five children all grown and married, three sons and two daughters. His eldest son, O. C. Ward,, lived on the premises and occupied a house on seven and a fraction acres which he had purchased from his father for $300, but for which he had no deed. As to this tract, however, there is no controversy. On November 18, 1892 in contemplation of marriage he executed and delivered to O. O. Ward a deed for twenty-five acres, including the seven acres and a fraction. On the next day he executed a deed to H. N. Ward for about thirteen acres ; and on November 23, 1892, he executed a deed to his other son for eighteen acres; and in the evening of the same day he married Catherine Stough, who is now his widow and plaintiff below. There is some controversy as to when these deeds were delivered; but we will assume that they were delivered, as claimed, before the marriage. She, however, had no knowledge of their existence at the time of the marriage, nor until after the death of her husband when they were placed on record. They were, in each case, voluntary deeds supported by no other consideration than the love and affection of a. father for a son, except as to the seven acre tract contained in the deed to the eldest son, and which, as we have stated, is not in question.
The question then arises upon this state of facts, whether the plaintiff is entitled to dower in the lands covered by these deeds, except the seven acres. We think she is. They were all voluntary deeds made in contemplation of marriage. It can make no difference in principle whether actual fraud was intended, or not, their execution and delivery beforethemarriage,, without her knowdedge or means of knowledge, oper *127 a ted a legal fraud on wliat Avould be her rights in case of marriage. A desire to provide for the children of his former ivife Avas both natural and proper, but as they had no legal claims upon his bounty, before he could rightly, in contemplation of marriage, dispose of his property to them for such purpose, it became his legal duty to disclose bis purpose to one who, by her intermarriage with him, would become vested by law with a legal interest in the property that could not be divested without her consent. A father’s legal duty to his children in no case requires him to practice a fraud on his wife or any one else. If, after entering into a contract of marriage, if not before, he desires to make provision for his children by a former-wife, it is his duty to communicate that fact to his intended wife, if thereby her rights are to be affected, that she may have an opportunity to say whether she consents to the disposition before consummating the agreement to marry. A failure to do this is, at least, a constructive fraud. In Arnegaard v. Arnegaard, 7 N. Dak., 475, where the question has received careful consideration upon principle and authority, it is, said: “Whatever may have been formerly held, it has become settled in these latter days that the purpose to deceive and defraud the other prospective spouse is imputed to the one Avho makes the attempted transfer, and conceals the fact until after marriage.” In England, for reasons largely relative to the custom that there prevails of making a settlement in lieu of dower, called a jointure, before marriage, less consideration has been given to antenuptial conveyances by the husband, while such conveyances by the Avife are uniformly held invalid. But in this country no such distinction is made : and the decisions are, as said in the case just cited, practically unanimous that the *128 mere fact that a secret transfer was made after the engagement, is conclusive on the question of fraud so far as the right of dower is concerned. In some of the cases the element of actual fraud was shown v to have existed, and some of the rulings are placed on that ground, but, as said in the case just referred to: “In the great majority of cases the broad rule is enunciated that a man owes to the woman to whom he is betrothed the utmost good faith, and that he cannot consistently with that sacred obligation, secretly divest himself of property in which she would by marriage secure rights which would thereafter be beyond his control.” This proposition is fully sustained by the decisions: Swaine v. Perine, 5 Johns. Ch., 482; Chandler v. Hollingsworth, 3 Del. Ch., 99; Smith v. Smith, 2 Halstead Ch., 515; Youngs v. Carter, 50 How. Prac., 110, affirmed on appeal, 10 Hun., 191; Cranson v. Cranson, 1 Mich., 230; Pomeroy v. Pomeroy, 51 How. Prac., 228; Davis v. Davis, 5 Mo., 183; Gainor v. Gainor, 26 Iowa, 337; Thayer v. Thayer, 14 Vt., 107. See also Stewart Marriage & Divorce, section 44. Beach on Cont., section 1309.
In Westerman v. Westerman, 25 Ohio St., 500, it appeared that the wife in contemplation of marriage with the plaintiff and after she had entered into the engagement, conveyed certain of her lands to two sons by a former marriage without consideration. The land had not been fully paid for, and the husband was compelled by suit to pay the balance of the purchase money. The court held the conveyance to be a fraud on the marital rights of the husband; that the wife was primarily liable for the amount due, and substituted the husband, for the purpose of indemnity, to the place of the vendor as against the land. This case recognizes the principle that the parties to a contract *129 of marriage are bound by the obligations of good faith; and that neither can thereafter by voluntary gifts affect such legal rights as either may acquire in the property of the other by marriage without the consent of the party to be affected.
After adverting to the rule in England that permitted a man, after contracting marriage, to make ante-nuptial conveyances of his lands, and the rigidity with which a like right was denied to the contemplated wife, and, pointing out the reason for this difference, Daniels, J., in Youngs v. Carter, supra, says: “There never was any good reason why the disability imposed in this respect upon the wife, should not be equally applied to the conduct of the husband. If it was inequitable for her to convey away her property in anticipation of marriage, in order to prevent it from becoming subordinate to her husband’s anticipated rights in it, it was equally so for him to do the same. The principle that restrained her should be equally as effectual over him ; for, if the act of one was a fraud, it was certainly no less so when it was performed by the other. In Chandler v. Hollingsworth, supra, the inability of the husband by an antenuptial conveyance to affect the wife’s right of dower after the contract of marriage has been entered into, without her knowledge, is placed on the ground, that dower is a property right, which she acquires by the marriage, and that such conveyance is as much a fraud on her rights, as a conveyance to defraud future creditors. Speaking of the “unjust discriminations made by the English courts of equity, in withholding from the wife such protection as is given the husband against secret antenuptial settlements,” and the reasons therefor, the chancellor says: “But in this coun *130 Lry, clearly the same reasons do not apply. Her dower is the only provision made by law for the wife out of the husband’s real estate. Practically it is a most important resource, and the only form of provision out of real estate enjoyed by her, except under wills. It does, in fact, to a large extent, enter into the wife’s expectations in contracting marriage, and properly so. It, therefore, ought to receive all the protection accorded to any marital right; to refuse it would, in this country, where jointures are unknown, render the right of dower precarious, if not wholly illusory.”
It may be worth while to observe that the settlement of a jointure on a wife before marriage, in lieu of dower, freed the remaining lands of the husband from the marital right of the wife to dower in his remaining lands; and so antenuptial conveyances, under such circumstances, by a man under contract to marry, would not be open to the same imputation of bad faith, as where no such settlement had been made. For the reason and origin of the rule in England as to antenuptial conveyances by the husband, see the intelligent account given by the chancellor in Chandler v. Hollingsworth, 3 Del. Chan., at pp. 115, 116.
This annunciation of the law does not interfere with the power of the contemplated husband to make provision for his children by a former marriage; it only requires that in doing so, he shall not dispose of that, which, by the law of marriage, the wife will acquire as a legal right incident to the relation. He may dispose of his property in this regard as he thinks proper, subject, however, to his wife’s right of dower.

Judgment affirmed.