MARY A. EATON and another *vs*. DANIEL M. ROBBINS and others.

July 25, 1882.

**Homestead—Decease of Owner — Right of Surviving Husband.**—Under Laws 1875, *c*. 40, § 2, the right of the surviving husband or widow to hold and enjoy the use and possession of the homestead for life was not subject to be defeated by the will of the deceased owner, but the same descended to the heirs or passed to the devisees, subject to such right of the survivor. The estate so conferred on the survivor was in the homestead *eo nomine*, as created and defined by the exemption act, and was not liable to sale upon execution for his debts.

**Same—Enlargement of Homestead Right.**—The provisions of this section of the statute, in conformity with the spirit and policy of the homestead legislation of this state, operated to enlarge and extend the homestead right and privilege, and to continue to such survivor the right to the enjoyment of the use and possession of the family homestead for the term of his or her natural life as exempt property.

**Same — Abandonment by Survivor — Creditors.** — The question of the abandonment of the homestead by the survivor is one which does not concern his creditors, since his interest was not subject to their lien, but arises solely between him and parties interested in the title of the deceased owner.

Appeal by defendant Robbins from an order of the district court for Ramsey county, *Brill*, J., presiding, refusing a new trial.

*Lamprey, James & Warren*, for appellant.

*Bigelow, Flandrau & Squires*, for respondents.

VANDERBURGH, J. In September, 1875, Margaret L. Eaton, late of the county of Ramsey, died testate, leaving her surviving, her husband, Alonzo Eaton, and her children, these plaintiffs, then minors. She then, and for a long time previously, was the owner of the house and lot in controversy, which constituted the family homestead as defined by statute, and which was occupied as such by her and her family, including the plaintiffs. By her will she granted and devised this and other real property to the plaintiffs in equal shares. The will was duly probated, and by final decree the homestead premises were assigned to and vested in the plaintiffs, "share and share alike,

subject to the estate therein of Alonzo Eaton, the surviving husband of the said deceased." The plaintiffs have since continued in the possession of the premises, in person or by their tenants. But Alonzo Eaton, the surviving husband, has never occupied the same since the death of Mrs. Eaton, but has been continually absent therefrom, and on the sixth day of November, 1875, conveyed by quitclaim deed an undivided one-third interest therein to Mary L. Eaton, one of plaintiffs, and afterwards, in 1880, executed to them jointly another quitclaim deed of his entire interest.

On the sixth day of February, 1875, the defendant Robbins had recovered a judgment against Alonzo Eaton for $115.67, upon which execution was duly issued, and a sale made thereon in December, 1880, to the defendant, of all his (Eaton's) right and interest in the premises in question. The plaintiffs, by this action, seek to have this execution sale adjudged void, on the ground that the judgment debtor took no estate or interest therein subject to the lien of the judgment or to sale upon execution. The consideration of this question involves the construction of Laws 1875, c. 40, §§ 2, 3. By section 2, the surviving husband or widow became entitled "to hold for the term of his or her natural life the homestead of the deceased, as such homestead is defined in the statutes relating to homestead exemption, free and exempt from all claims on account of debts of the deceased." And by section 3, such survivor became entitled absolutely to an undivided one-third of all other lands of the deceased, to the extent of his or her estate or interest therein, free from any testamentary disposition thereof not assented to in writing by such survivor, and subject to a just proportion of the debts of the deceased.

We think the term "homestead," in the second section, was not used merely as a convenient designation of a certain portion of the estate in which the survivor was to take a freehold, but *eo nomine* as created and defined in the homestead exemption act. This legislation was but a further extension of the homestead policy of the state, and substantially places the husband and wife upon the same footing in reference to the homestead, whether the legal title be in the one or the other. For the better security of the family it is intended to

continue to the surviving husband or widow the right to the enjoyment of its use and possession, for the term of his or her natural life, as exempt property. Such survivor holds by the distinct tenure conferred by the statute. *Stilloway* v. *Brown*, 12 Allen, 30. The provisions of this section, which thus expressly continues the exemption as against the debts of the deceased owner, must, in order to fulfil the legislative intent, be construed *a fortiori* to exempt the family homestead from the debts of the survivor.

It would seem to be clear, from the language of these two sections of the act of 1875, that the one-third or "dower" interest conferred by the third section was in land other and exclusive of the "homestead" provided by the second section. The act of 1875 simply substituted these new provisions in lieu of the estates in dower and by the curtesy, title by descent or devise remaining otherwise unchanged. Had there been no will, Mrs. Eaton's real estate would have descended to her children, subject, under this act, to her husband's life interest in the homestead, and his right to an undivided one-third of the other lands in fee. There was no interest in this lot, therefore, upon which defendant's judgment could attach as a lien, or which was subject to sale upon execution. Nothing could be further from the purpose of the legislature than that, upon the decease of the owner of the homestead, the same should be seized for the debts of the survivor, and pass absolutely from the possession and control of the family during his life, exempt from the debts of one party to the marriage, in order to let in the creditors of the other.

On the other hand, the power to dispose of the homestead by will must also be subject to the homestead tenure of the survivor. It would be as inconsistent with the intent and purpose of this legislation, in thus extending the benefit of the homestead act, to make it subject to be divested by the will of the deceased, as to permit it to be cut off by a sale upon execution for the debts of the survivor. *Brettun* v. *Fox*, 100 Mass. 234. In the construction of the act, the plain language and clear intent of the second section leave no room for an inference to the contrary. The title of the homestead, therefore, passed to the devisees in this case, subject only to the right of the surviving parent to the use and possession thereof as a homestead,

·which he might, if he chose, quitclaim or release to them, as he has done.    Whether he had previously lost, by absence or abandonment, his right to claim and occupy the premises in question as a homestead, is not considered; for if he had, since his interest therein was solely and entirely an estate of homestead, and held by the statutory tenure as exempt, all the residuary title and interest being in the heirs or devisees, no lien could have in any event attached in favor of his creditors, and, whether abandoned or otherwise disposed of by him, there was nothing remaining subject to his debts.

Order affirmed.