JOSHUA HOLBROOK *vs.* SAMUEL WIGHTMAN.

October 19, 1883.

Homestead—Estate of Surviving Husband or Wife.—Under the provisions of Laws 1876, *c.* 37, § 2, the estate or interest of the surviving husband or wife in the exempt homestead is not subject to be divested by the will of the deceased owner; following *Eaton* v. *Robbins*, 29 Minn. 327.

Same—Nature of Estate.—*Held, also,* (modifying *Eaton* v. *Robbins* in this respect,) that the interest acquired by the survivor in such homestead is an estate for life, with no limitation upon the manner of its enjoyment; but the homestead premises are transmitted to the survivor by operation of law, and may thereafter continue to be occupied as a homestead or not, as the interest and convenience of such survivor may require.

Harriet E. Wightman died seized of an eighty-acre tract, which she occupied at the time of her death as a homestead. By her will, which was duly admitted to probate in Waseca county, she devised the tract to Joshua Holbrook, her father. The estate having been duly administered upon, the probate court made a final decree, assigning this tract to Joshua Holbrook. Samuel Wightman, the husband of the deceased, appealed, upon questions of law alone, from this final decree, to the district court for Waseca county, where the decree of the probate court was reversed by *Buckham,* J., and judgment was entered assigning the tract in fee-simple to Joshua Holbrook, subject to a life-estate in Samuel Wightman. From this judgment Joshua Holbrook appeals.

*Lewis & Leslie,* for appellant.

*Collester Bros.,* for respondent.

VANDERBURGH, J. The matter in controversy is the disposition of a farm of 80 acres of land, the homestead property of Harriet E. Wightman, deceased, which, shortly before her death, in 1880, she devised to her father, Joshua Holbrook, who appeals from the judgment of the district court, adjudging the respondent, Samuel Wightman, the surviving husband, entitled to an estate for life therein. The questions presented are (1) whether, under the present statute, it is in the power of the owner to divest by will the interest of such survivor in the homestead; and (2) what is the nature and extent of the

interest in the homestead which the survivor takes. These questions were considered in the case of *Eaton* v. *Robbins*, 29 Minn. 327, but they have been again argued in this case, and, in view of their importance as affecting the laws of descent, a further consideration of the matter is deemed proper.

It was determined in *Eaton* v. *Robbins* that by Laws 1875, c. 40, § 2, the right of the survivor to a life-estate in the homestead was not subject to be defeated by the will of the deceased owner. We adhere to this conclusion. Section 3 of the act permits other lands to be devised with the assent of such survivor. But the policy of the law, doubtless for the same reasons that kept dower secure from testamentary disposition, does not permit the estate or interest to be taken away by devise upon any condition. Analogous statutory provisions have received similar construction in other states. In *Meech* v. *Meech*, 37 Vt. 414, 418, though the statute as it then stood in terms empowered a testator to devise any interest in lands unconditionally, it was held controlled by the general provisions granting the homestead to the surviving wife and children, and the court say: "The spirit of the act and all its provisions indicate that it was intended that the husband should not have the power by will to devise it away from his wife and minor children." "As the husband by will cannot defeat dower, we may well consider that he should not be allowed to defeat the homestead right, which so much resembles dower." Thompson on Homesteads, § 544; *Runnels* v. *Runnels*, 27 Tex. 515, 519; *Succession of Hunter*, 13 La. Ann. 257; *Schneider* v. *Hoffmann*, 9 Mo. App. 280.

The incorporation of these sections into the statute of 1876, c. 37, (Gen. St. 1878, c. 46,) works no change in their construction in this respect. They are simply additional provisions ingrafted upon the statute in relation to the descent of land, conveniently arranged in the same chapter; that is to say, in addition to the other provisions of the statute, section 2 "also" includes this definite homestead provision for the surviving head of the family.

2. The statutes of nearly all the states provide in some form for the transmission of the homestead for the benefit of the surviving

members of the family.   The right to the use and occupation of certain premises as an exempt homestead is also treated as a substantial interest in itself, and is frequently denominated in the books an "estate of homestead."   It is placed by Mr. Washburn in the category of life-estates.   1 Washburn on Real Prop. (4th Ed.) 342.

The language of the section under consideration entitled the defendant to hold, for the term of his natural life, the homestead of the deceased, as defined in the statute, free from any claim on account of her debts.   The question arises, upon the construction of this language, whether the estate thereby created is an absolute or a conditional life-estate; in other words, whether it is the reservation of a homestead for the survivor and his family, contingent upon the property remaining a homestead and continuing to be occupied as his residence, or whether he is entitled to hold the homestead premises for the term unconditionally, with the privilege of retaining it as his homestead or dwelling-place or not, as may suit his interest and convenience.

In *Eaton* v. *Robbins*, 29 Minn. 327, the court favored the former view, and was of the opinion that it was the purpose of the act, for the better security of the family, and to preserve its exempt character as to the debts of the survivor as well as of the deceased, to grant a life interest in the homestead as such, and that, by force of the statute, the homestead of the deceased was transmitted to the survivor, to be held on the condition that it retain its homestead character; and this construction is in harmony with the spirit and policy of the laws of most of the states on this subject.   Thompson on Homesteads, §§ 550, 588.   But the courts are inclined to place a liberal construction upon the requirement of literal occupancy, so as to favor the beneficial purposes of such statutes.   *Locke* v. *Rowell*, 47 N. H. 46; *Vandiver* v. *Vandiver*, 20 Kan. 501.   In the statutes of most of the states, it will be observed, however, that the intention that the right shall pass upon the condition of occupancy is obvious from the language used.   Thompson on Homesteads, § 540.   But in Vermont, where the statute provides that the homestead shall vest in the widow and minor children, it is held to pass a plenary title.

*Day* v. *Adams,* 42 Vt. 510. The same construction was followed in Missouri. *Skouten* v. *Wood,* 57 Mo. 380. The statute was, however, subsequently modified so as to secure the homestead right only. *Poland* v. *Vesper,* 67 Mo. 727. The New Hampshire statute is held to vest in the widow a conditional life-estate in the homestead upon its assignment to her. *Tidd* v. *Quinn,* 52 N. H. 341. In California, the surviving husband or wife takes an absolute title to the homestead. *Herrold* v. *Reen,* 58 Cal. 446. In most of the other states the statutory provisions upon the subject more nearly resemble those previously existing in our own exemption law in favor of the widow and minor children.

Upon further consideration of the language and apparent purpose of the act of 1875, in connection with the provisions of the existing exemption law, we·are constrained to say that we deem the construction given to section 2 in question, in *Eaton* v. *Robbins,* too narrow. The construction of the provisions of the statute in question was not under consideration in *Wilson* v. *Proctor,* 28 Minn. 13. It could not have been intended to create an estate which would be of less practical value to the survivors than the estates abolished, and, in creating the life-estate in the homestead, respect was had to the interests of the family, and the welfare of its surviving head, whose right to continue in the enjoyment of it can be disturbed neither by creditors nor heirs, thus continuing the life tenure of the estates abolished, with absolute exemption from the debts of the deceased, and also exemption from the debts of the survivor upon the condition of occupancy; such survivor thus standing in the shoes of the deceased owner, and having the same right to retain or dispose of his or her estate in the property as such owner enjoyed; the purposes of homestead exemption being as effectually served in one case as the other.

By the language "entitled to hold," it is intended to pass the entire estate in the subject of the grant for the term. It means the right to possess the property in virtue of a legal ownership, and is not limited to an actual personal occupancy; and unless the term "homestead" in itself implies a condition, the tenure is that of an ordinary life-tenant in the land. "Eighty acres, and the dwelling-house

thereon,   *   *   *   .owned and occupied by," etc., constitute the exempt homestead.   This the law transmits to the survivor for life, not merely to retain it as the family residence, nor (though such privilege is valuable) as long as it shall remain a homestead.   It is enough that it is the homestead of such deceased owner at death, and as such it passes, but with no limitation on its subsequent enjoyment for the term.   So a purchaser, under the act allowing a sale of the homestead, takes it exempt from the debts of the vendor, but takes the whole estate in the land, and the term "homestead" has the same meaning in each statute.   We think, therefore, that the plainer and less artificial construction of the language is that the survivor takes a life-estate in the homestead premises analogous to that of dower, and we believe this to be the construction which is generally placed upon it by those charged with the duty of executing the law.   Potter's Dwarris on Stat., 179, note; *Edwards' Lessee* v. *Darby*, 12 Wheat. 206, 210.

The family residence or home is thus continued by operation of law to the survivor, and, at his option, may be occupied and held as exempt property, as his or the interests of the family may require; and ordinarily their interests are not adverse.   Or it may be leased or disposed of, as in the case of ordinary life tenants.   In this way the general purposes of the homestead act may still be secured, without imposing the absolute necessity of occupancy in cases where the interests of the survivor and his family do not require it.   Where the owner is the survivor, this is, of course, his relation to the homestead; and it is natural and reasonable that the title by survivorship should be intended to be held in the same way.   The fact that the statute confers the right for life only; that it is in the homestead; and that the exemption (from the debts of the deceased) is continued, are the principal reasons in favor of the opposite construction, and their force is admitted; but we think they are outweighed by the considerations we have suggested, and particularly in view of the fact that the homestead may be preserved by the survivor as in other cases.   Such survivor is to be deemed the owner of the premises, within the meaning of the homestead law.   *Wilder* v. *Haughey*, 21 Minn. 101.

We conclude, therefore, that the respondent in this case was entitled to a life-estate in the homestead of the deceased.

As to the other points considered in the case of *Eaton* v. *Robbins,* we adhere to the views therein expressed.

Judgment affirmed.