## DE FRANCE and others *v.* JOHNSON.[1]

*(Circuit Court, D. Minnesota. April, 1886.)*

1. HUSBAND AND WIFE—RIGHT OF SUPPOSED WIFE IN LAND.

   A woman who innocently marries and cohabits with a man who has a wife living from whom he has never been legally divorced, cannot acquire an interest in his land by reason of such supposed marriage.

2. SAME—MORTGAGE—WIFE FAILING TO ASSERT HER RIGHTS.

   Where a wife has knowledge that her husband is living with another woman as his assumed wife, and takes no steps to assert her own rights, she cannot, as against a mortgagee, who has no notice of her relation to the mortgagor, to whom the husband executes a mortgage, after the death of the husband set up her right in the property as a wife.

3. SAME—PURCHASE OF LAND WITH EARNINGS OF SUPPOSED WIFE—TRUST.

   Where the title to government land is obtained by a man with means saved from her earnings by a woman who is living with him under the impression that she is his lawful wife, but who was never legally married to him, because he had a wife living from whom he had never been divorced, the land, after the death of the man, will not be considered as held in trust for such supposed wife as against his true wife.

In Equity.

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

*Mott & Gipson,* for complainants.
*Benton & Roberts,* for defendant.

NELSON, J. The defendant in this suit, in July, 1884, commenced, on the law side of the court, an action in ejectment to recover against the plaintiffs De France her rights under the law of the state of Minnesota as a lawful wife of Augustus Johnson to certain lands in Rice county, described as follows, viz., the S. ½ of the S. W. ¼ of section 22, and the N. ½ of the N. W. ¼ section 27, township 109, range 21 W., containing 160 acres, of which the said Augustus Johnson was seized in his life-time. Guy De France and wife, Irena, admitted their possession of the land, but denied the right of the plaintiff to recover; and immediately, with Charles F. Tabor, who holds a mortgage on the land, brought this suit in equity to obtain an injunction perpetually restraining the further prosecution of the suit in ejectment, and for other relief. A temporary injunction *pendente lite* was allowed.

The defendant, Amanda M. Johnson, claims by virtue of the act relating to title to real property by descent. See Rev. St. Minn. 564. Section 2 of this act provides:

"The surviving wife shall be entitled to hold for the term of her natural life, free from all claims on account of the debts of the deceased, the homestead of such deceased, as such homestead is or may be defined in the statutes relating to homestead exemptions.

"Sec. 3. Such surviving wife shall also be entitled to, and shall hold in fee-simple, or by such inferior tenure as the deceased was at any time during coverture seized or possessed thereof, one equal undivided one-third of other lands of which the deceased was at any time during coverture seized or possessed, * * * but subject in its just proportion with the other real estate to the payment of such debts of the deceased as are not paid from the personal estate."

The law relative to the homestead provides, (Rev. St. Minn. 767:)

"Sec. 1. That a homestead consisting of any quantity of land not exceeding 80 acres, and the dwelling-house thereon and its appurtenances, to be selected by the owner thereof, * * * shall not be subject to an attachment, levy, or sale upon execution, or any other process issuing out of any court within this state. This section shall be deemed and construed to exempt such homestead in the manner aforesaid during the time it shall be occupied by the widow * * * of any deceased person who was, when living, entitled to the benefits of this act."

"Sec. 2. Such exemption shall not extend to any mortgage thereon lawfully obtained; but such mortgage * * * of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same, unless such mortgage shall be given to secure the payment of the purchase money, or some portion thereof."

The complainants in this equity suit claim relief for the following reasons: *First,* that Irena De France was the lawful wife of Augustus Johnson, to whom she was married October 20, 1835, at Detroit, and lived with him as his wife until his death,—until September, 1881; *second,* that the property was in the possession of Augustus Johnson at the time of his death, and was the result, mainly, of the

labor and economy of said Irena; *third,* that when Augustus entered the land in question in July, 1855, and obtained the title from the government, the land-warrant used in payment was purchased and paid for wholly or nearly so from the personal means and earnings of Irena after her marriage with Augustus, and that said Augustus attempted to enter the land in her name and take out the patent, but was prevented by the laws of the United States from so doing; and that after the issue of the patent he promised the said Irena to convey the same to her, and that she should thereafter hold the title in her own name, and in pursuance of said promise he deeded her the land on or about June 1, 1880; that on October 16, 1883, Irena and Guy J. De France, her present husband, mortgaged the land to Elizabeth L. Dobbin, for a loan of $2,000, which mortgage is still subsisting, and has been duly assigned to Charles F. Tabor, the co-complainant in this suit, and that the money obtained from said mortgage was used for the purpose of paying the outstanding debts, including the farm, and to pay a prior mortgage on the land executed by Augustus and Irena in January, 1879; and that Irena had no knowledge that Augustus had a wife living, but in good faith lived with him supposing that she was his lawful wife.

To this bill in equity the defendant, Amanda Johnson, answered, alleging that she was married to Augustus on the tenth day of March, 1833, at St. Albans, Vermont; that she lived with him until May, 1835, when he left her to procure a home in the west, promising to return for her in a short time, and that she corresponded with him until the spring of 1838, and never has had any communication with him since.

Voluminous testimony is taken, and on due consideration I find the following facts: *First.* Amanda Johnson was born April 15, 1809, and married in March, 1833, at St. Albans, Vermont, to Augustus Johnson; that they cohabitated together until May, 1835, and had two children as the issue of said marriage, both adults now living; that in May, 1835, Johnson left her for the avowed purpose of looking up a Western home, and she never saw him afterwards; that he corresponded with her until the spring of 1838 from Cleveland, Ohio, but no letter ever passed between them afterwards; that in 1838 or 1839 she was informed that he was living with another woman claiming to be his wife, and about 1840 heard that they had gone to Indiana to live, and in 1860 that he was living in Minnesota about 30 miles from St. Paul,—she heard nothing further until after his death in September, 1881; and that he was never divorced from her.

The complainant Irena was born about the second of February, 1819, in Onondaga county, New York, and removed with her father's family to Michigan about the year 1828, and from thence with them to Cleveland, Ohio, about 1830; that in October, 1835, she was married to Augustus Johnson by a clergyman at Detroit, Michigan, to which place they went for that purpose from Cleveland; that

they returned to Cleveland, resided there until 1840, and from there went to Lancaster, Ohio, and then removed to Greene county, Indiana, where they resided until the summer of 1855, when they removed to Rice county, Minnesota, where the land in controversy was purchased from the government, upon which they lived until the death of Augustus in September, 1881, and upon which Irena and her present husband, Guy J. De France, still reside; that during the cohabitation of Augustus and Irena she bore him eleven children, of whom three are now living; that in 1882 Guy J. 'De France and Irena were married, and in 1883 mortgaged the lands to one Dobbin (who was in ignorance of the prior mortgage of Johnson) for the sum of $2,000, and that this mortgage is now held by the complainant Tabor; the proceeds of the money obtained upon the mortgage went to take up a prior mortgage given by Augustus Johnson and Irena during his life-time, and to pay off the debts that had accrued in conducting the farm; that in June, 1880, Augustus Johnson lawfully conveyed all his right and title in the farm, through one Whipple, to Irena; that part of the money obtained to carry on the farm was the proceeds of the labor of Irena, supposing that she was the lawful wife of Augustus; that during the whole period of the relation between Augustus and Irena the latter was in entire ignorance of his prior marriage, or the existence of Amanda Maria Johnson.

Upon these facts the following conclusions are found: (1) Augustus and Irena were unable to contract marriage, and the second marriage is void absolutely, and not voidable; it did not make the woman a wife *de facto* until annulled. The statutes of Minnesota give no validity to the claim of Irena, although she was in ignorance of a former wife living. She is subject to the harsh rule which declares a second marriage *ipso facto* void, and denies to her any right in Johnson's estate. Amanda, the Vermont widow, and only legal wife, is not deprived of her statutory right of descent by the transfer of the lands to Mrs. Whipple, and under the statute she takes the homstead during life, and one undivided third of the other property in fee. The injustice of such a rule of the common law which subjects the innocent party to the harsh consequences of such a connection is well expressed by Mr. Scribner,—see 1 Scrib. Dower, (6th Ed.) 117:

"So far as the guilty party is concerned, it may be that these consequences furnish no ground of complaint against the law. Not, so, however, as to the party who unfortunately, as sometimes happens by artifice and deceit, has been entrapped into a forbidden connection. Where a pure-minded and virtuous female, innocent of all wrong, has been heartlessly deceived into an alliance sanctioned by all the formalities bestowed upon lawful wedlock, no good reason can be urged why, as some compensation for the cruel wrong inflicted upon her, she should not be entitled to all the rights and claims of a wife upon the estate of the guilty individual who has betrayed her confidence; and it is far from creditable to the civilization of the age that no step has been taken in that direction."

*Homestead of Augustus Johnson.* The statute confers upon the defendant a homestead right by virtue of marital relations existing at the time that Johnson, her husband, owned and occupied the land. It continued at the time of the transfer, and was consummated after his death, unless forfeited by improper conduct of the defendant which would estop her from asserting it now. No improper conduct is proved. The supreme court of this state (see *Holbrook* v. *Wightman*, 31 Minn. 168, S. C. 17 N. W. Rep. 280) has given a very liberal interpretation to this statute, and under that decision the defendant is entitled by descent to her homestead right which so much resembled dower.

*The Dobbin mortgage.* Is this mortgage a valid lien superior to the rights of the defendant? I think where the lawful wife, knowing the facts, allows another woman to appear as such, and occupy with her unfaithful husband a position which enabled them to deal with innocent third parties as husband and wife, such third parties will be protected. An equitable estoppel arises forbidding the lawful wife, after the death of her husband, to enforce an undisclosed claim in derogation of the innocently acquired contract rights. Johnson and Irena, during his life-time, had mortgaged the property to one Brown, and after his death and the subsequent marriage of Irena the latter mortgaged the property to Dobbin, who was in ignorance of Johnson's prior marriage, and out of the proceeds paid the amount that was due upon the previous mortgage, and such debts as had been contracted during the life-time of her supposed husband. In equity there can be no question that this money obtained by the Dobbin mortgage is a superior lien to all the rights of Amanda. As early as 1839 she was aware of the fact that he was living with another woman who claimed to be his wife, and as late as 1860 was informed that he was living in Minnesota with such relation existing. With full knowledge of this fact, she allowed such connection to remain without any attempt upon her part to enforce whatever rights she may have had as the lawful wife of said Augustus. In view of such a condition, she cannot now attempt to assert a claim superior to the rights of innocent parties under the relation as it was found by them. She, however, is entitled by the statute of the state, as against Irena De France, to all the rights which the law gives her; she must take them, however, subject to the mortgage which was executed to Dobbin.

The evidence is not sufficient to create a trust in favor of Irena under the statute of Minnesota. She lived with Augustus Johnson believing that he was her lawful husband, and any accumulation of money by her labor was made for the benefit of her supposed husband.

The life-estate in the homestead, according to the computation of the Northampton tables, on a valuation of $1,750, which is one-half of the value of the 160 acres, and the age of the defendant at 77 years, is $415.96. This is the purchase price, and on payment of

this amount the complainants De France can hold and occupy the homestead.

A decree will be entered declaring the mortgage held by Tabor a first lien on the whole 160 acres, and also granting to the complainants De France the right to occupy the homestead, and making the injunction permanent restraining the further prosecution of the action in ejectment on payment within 60 days after notice of this decision of the sum of $415.96 above specified. On failure to pay this amount, the injunction is dissolved, and the only relief granted will be as above stated.