DUDLEY, Respondent, vs. DUDLEY, Appellant.

*April 9— April 29, 1890.*

*Antenuptial deed in fraud of marital rights: Dower: Homestead.*

1. In an action to set aside a quitclaim deed given by plaintiff's husband to the defendant (his mother) a few days before the marriage, the evidence — showing, among other things, that the land conveyed had descended to him from his father, subject to the homestead and dower rights of the mother; that its value, exclusive of the homestead, was $1,300; that he was then largely indebted to his mother; that he was advised to give the deed by several friends, to whom he stated the circumstances and that his father had intended to leave the land to his mother and that she would need it and he would not; and that the deed, which recited a consideration of one dollar, was immediately recorded, but the fact of its execution was not communicated to the plaintiff — is *held* not to sustain findings of the trial court that the mother persuaded and induced him to make the deed and that it was fraudulent as to the plaintiff.

2. In such action the deed could be set aside, in any event, for no other purpose than the recovery of dower by the plaintiff.

3. The life-estate of the defendant in the homestead excluded the possibility of plaintiff's dower therein.

4. An antenuptial deed is not necessarily fraudulent because not disclosed to the intended wife.

APPEAL from the Circuit Court for *Dane* County.

The facts are stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

For the appellant there was a brief by *La Follette, Siebecker & Harper*, attorneys, and *Pinney & Sanborn*, of counsel, and a supplemental brief by *Pinney & Sanborn*, and oral argument by *S. U. Pinney*. They contended, *inter alia*, that the homestead estate which descended to defendant was a freehold estate which gave her seizin. 4 Kent's Comm. 26; 1 Washb. Real Prop. 87, 88, and note 5; Coke, Litt. 42*a;* 1 Greenl. Cruise, 102, 103, pl. 2, 3, 7; *Roseboom v. Van Vechten*, 5 Denio, 415. Such freehold

estate in defendant prevented seizin in her son. *Holbrook v. Wightman*, 31 Minn. 168; *Abbott v. Abbott*, 97 Mass. 138; *Kerley v. Kerley*, 13 Allen, ·286; *Browning v. Harris*, 99 Ill. 456. Hence his wife could have no claim for dower in the homestead. 4 Kent's Comm. 39, and notes; 1 Bish. Mar. Wom. secs. 273–277; 1 Scrib. Dower, 217, 308; *Durando v. Durando*, 23 N. Y. 331; *Blood v. Blood*, 23 Pick. 80; *Eldredge v. Forrestal*, 7 Mass. 253; *Fisk v. Eastman*, 5 N. H. 240, 479; *Arnold's Heirs v. Arnold's Adm'r*, 8 B. Mon. 204; *Gardner v. Greene*, 5 R. I. 104; *Cocke's Ex'r v. Philips*, 12 Leigh, 248; *Stow v. Tifft*, 15 Johns. 458; *West v. Ward*, 26 Wis. 579; *Merrifield v. Merrifield*, 82 Ky. 535; *Carolina Nat. Bank v. Senn*, 25 S. C. 572. The deed, if void at all, is void only as to plaintiff's right of dower. *Youngs v. Carter*, 10 Hun, 194; *Green· v. Green*, 34 Kan. 740; *Butler v. Butler*, 21 id. 521; *Hafer v. Hafer*, 33 id. 449; *Busenbark v. Busenbark*, id. 572; *Jones v. Jones*, 64 Wis. 301; *S. C.* 71 id. 513; *Maleverer v. Redshaw*, 1 Mod. 35; *Mackie v. Cairns*, 5 Cow. 554, 564; May, Fraud. Conv. 477; *Beverley v. Gatacre*, 2 Roll. Rep. 305, cited in *White v. Drake*, 3 Keb. 6; Bump, Fraud. Conv. 451; *Moseley v. Moseley*, 15 N. Y. 334; *Darling v. Rogers*, 22 Wend. 483; *Hoit v. Houle*, 19 Wis. 472; *Pickering v. I. R. Co.* L. R. 3 C. P. 250; *Ex parte Browning*, L. R. 9 Ch. App. 583; *Minnesota Co. v. Chamberlain*, 3 Wall. 704; *Railroad Co. v. Soutter*, 13 id. 517; *Barnes v. C., M. & St. P. R. Co.* 122 U. S. 1; *Chandler v. Hollingsworth*, 3 Del. Ch. 99; *Bredon's Case*, 1 Rep. 76; Shep. Touch. 68; *Doe v. Pitcher*, 6 Taunt. 359, 369; 1 Story's Eq. Jur. sec. 371; *Croker v. Martin*, 1 Bligh (N. S.), 573, 588–91; *Dolphin v. Aylward*, L. R. 4 H. L. 499, 500, 502; *Walthampton's Estate*, L. R. 26 Ch. D. 391; *Kekewich v. Manning*, 1 De Gex, M. & G. 176; *Gray v. Hook*, 4 N. Y. 449; *Tobey v. Robinson*, 99 Ill. 222; *Widoc v. Webb*, 20 Ohio St. 431; *Hanauer v. Doane*, 12 Wall. 342, 345. The mere non-communication to plaintiff of

the existence of the deed did not render it void. *Jones v. Jones,* 64 Wis. 307; *Fennessey v. Fennessey,* 84 Ky. 519; *Hamilton v. Smith,* 57 Iowa, 15; 1 Scrib. Dower, 591, 595; *Champlin v. Champlin,* 15 Atl. Rep. (R. I.), 85; 1 Lead. Cas. in Eq. 605, 618, 623; 2 Kent's Comm. 175; *Saunders v. Harris,* 1 Head, 185; *Jordan v. Black,* Meigs (Tenn.), 142; *Logan v. Simmons,* 3 Ired. Eq. 487; *Rumsay v. Joyce,* McMullan's Eq. 236, 242; *De Mandeville v. Crompton,* 1 Ves. & B. 354; 2 Vaisey, Mar. Sett. 1581, 1583, 1584; *Maber v. Hobbs,* 2 Y. & C. 317; *Loader v. Clarke,* 2 Macn. & G. 382.

*William Ruger,* for the respondent, contended, *inter alia,* that the necessary effect of this secret transaction, if the deed were valid, would be to defeat the plaintiff's marital rights and just expectations as the wife of Charles L. Dudley. The logical inference of fact from the testimony is that this was intended, as respects this property, and the law conclusively presumes that this necessary result was intended, and holds the deed made to effectuate it absolutely void. *Jones v. Jones,* 64 Wis. 301; *Way v. Way,* 67 id. 666; *Freeman v. Hartman,* 45 Ill. 59; *Thayer v. Thayer,* 14 Vt. 107; *Baird v. Stearne,* 15 Phila. 339; *Duncan's Appeal,* 43 Pa. St. 67; *Robinson v. Buck,* 71 id. 386; *Miskey's Appeal,* 107 id. 611; *Gilson v. Hutchinson,* 120 Mass. 27–32; *Pomeroy v. Pomeroy,* 54 How. Pr. 228, 232–4; *Baker v. Jordan,* 73 N. C. 145; *Smith v. Smith,* 6 N. J. Eq. 515, 521–2; Wait, Fraud. Conv. secs. 7–10, 70, 382, 110 and note, 314–5; Boone, Real Prop. secs. 289, 390; 2 Bish. Mar. Wom. secs. 343, 350–2, 355; Willard's Eq. Jur. (Potter's ed.), 696–7. The deed being fraudulent and void as against the plaintiff, it follows that as to her C. L. Dudley died seized of all the interest in the land in question assigned to him by the judgment of the county court of Dane county. Many of the decisions already cited are based upon this assumption, and it is so expressly ruled in *Thayer v. Thayer,*

14 Vt. 107, 118; 39 Am. Dec. 211; *Brown v. Bronson*, 35 Mich. 416, 419. See, also, *Cornell v. Radway*, 22 Wis. 265. It may be conceded that C. L. Dudley could, by will or deed free from the vice of fraud, have disappointed plaintiff's expectations and barred her marital rights, in so far as they were contingent and dependent upon the exercise of his power to dispose of his property; but this is wholly immaterial, so long as he did not lawfully do so, but as to her died seized.

ORTON, J. The facts of this case are substantially as follows: William H. Dudley died on the 2d day of July, 1879, seized of lots 7 and 8, and the east twenty-five feet of lots 6 and 9, in block 7, in the city of Madison. On lot 8 and the east twenty-five feet of lot 9 there was a dwelling-house, where he lived and died. He left also a personal estate which, after the payment of all debts and expenses, amounted to the sum of over $26,000, one half of which was assigned to the defendant as his widow, and the other half to his son, Charles L. Dudley, on the 12th day of February, 1880, the whole of which remained, however, in the hands of said Charles as administrator, and only a small portion of the defendant's share has ever been paid to her, but was retained by him until his death. All of the above real estate was also assigned to said Charles, subject to his mother's homestead right and right of dower. The homestead embraced the whole of lot 8 and the east 25 feet of lot 9. Lot 7 and the east 25 feet of lot 6 was vacant property, and was worth the sum of $1,300, and the homestead property was worth $7,000, at the time of William H. Dudley's death.

In May, 1879, the said Charles L. Dudley and the plaintiff entered into an agreement of marriage to be consummated thereafter upon request, and this agreement was known to both the father and mother of Charles; and in the summer of 1880 the day of the marriage was fixed to take place on

the 7th day of October following, which was also known to his mother, the defendant, and on said day the marriage took place.

On the 27th day of September, 1880, the said Charles gave to the defendant, his mother, a quitclaim deed of said real property for the nominal consideration of one dollar, and caused the same to be recorded on the same day. At that time the said Charles owed the defendant a large amount of money, which he had appropriated to his own use, of the moneys of said estate,— at least the sum of $5,000; and it has never yet been paid. Charles L. Dudley, for some time before executing said quitclaim deed, took counsel of several of his friends, among whom were two former clerks and partners of his father, a neighboring lady, an old friend of the family, and Mr. Siebecker, an attorney at law, and now the judge of this circuit, and who had been his legal partner in this city,— all persons of the very highest respectability and integrity,— as to what he ought to do about conveying to his mother the fee or vested remainder in the homestead property, and the title of the vacant lots. After having stated to them the circumstances, and the fact that his father had intended to leave said property to his mother, but was unable to do so in his last sickness, to which time he had deferred it, and that his mother would need it, and that if he conveyed it to her it would come back to him again in time, and that he felt it his duty to his mother to so convey it, they advised him that he ought to do so. The said Charles at the time had control of all the moneys of the estate, and was supposed to be worth much more in pecuniary means than the value of said real property; and he told his friends that he would not need it and his mother would, and that he thought it but justice and right to his mother to deed the property to her.

The plaintiff, as the widow and sole heir at law of the said Charles L. Dudley, who died on the 2d day of Novem-

ber, 1883, in the city of Chicago, Illinois, brings this suit, and, after stating the main facts in her complaint, prays that said deed be adjudged fraudulent and void as to her, and be set aside and canceled, and that she be adjudged to be seized in fee of the title to said premises, and entitled to the possession thereof, subject only to the defendant's right of dower and homestead, and for other relief. The ground upon which this relief is asked is stated in the complaint as follows: "That the defendant well knew, and had for a long time prior thereto known, of said contract of marriage, and knew that said Charles L. Dudley and plaintiff were then intending shortly thereafter to be married, and knew that said Charles L. Dudley was then arranging and preparing for the celebration of such marriage, . . . and then having such knowledge, *wrongfully and fraudulently persuaded and induced* the said Charles L. Dudley to convey to defendant all and singular his right, title, and interest in and to the lands and premises hereinbefore described." "The plaintiff had no knowledge or information respecting said deed until after the death of said Charles L. Dudley, . . . and that plaintiff has never assented to or ratified it." "That said deed was *procured*, and was *executed* and delivered, for the *wrongful and fraudulent purpose* of preventing the plaintiff from acquiring, by marriage with said Charles L. Dudley, any interest in the lands and premises hereinbefore described, and that said deed is fraudulent as to the plaintiff, in that it was executed and delivered without consideration, and in that it was *fraudulently intended* that it should, and that it *fraudulently* and *wrongfully* did, prevent the descent of the premises hereinbefore described, and of any interest in the same, to the plaintiff."

It will be observed that the *gravamen* of the complaint is the *actual* fraud of the defendant in inducing and persuading the said Charles to make the conveyance. There is no charge of *intended secrecy* on the part of the said

Charles, but only that the deed was made without the plaintiff's knowledge or information. There is no charge or proof that the said Charles L. Dudley ever informed the plaintiff before the deed was made that he owned the said property or had any interest in it. He may have informed others of it, and they may have informed the plaintiff, and she no doubt knew something of the situation of the property, but, as to whether she knew what other property or means he had, or his financial or pecuniary circumstances, the record is silent. The defendant has continued in the possession of said premises since her husband's death, and her dower therein has never been assigned, and she has continued to occupy the homestead thereon. A part of the time the said Charles and the plaintiff occupied the house with the defendant, but left and abandoned it some time before his death, and moved to the city of Chicago, where they resided at the time of his death.

The circuit court, besides other facts, found that the defendant *persuaded* and *induced* the said Charles to make the deed, and that the deed was fraudulent as to the plaintiff. We are unable to assent to either of these findings. The facts above stated are sustained by a clear preponderance of the testimony. We do not think the evidence shows that the defendant *persuaded* or *induced* the said Charles to make the deed. Those are strong terms, even when unaccompanied by the qualifying word *fraudulently*. *Mrs. Dudley*, the defendant, may have assented to the making of the deed, or she may have expressed the wish to have it done; and that is scarcely proved. The evidence shows most clearly that Charles L. Dudley, in making that deed to his mother, acted from his own sense of right and duty. The testimony of Judge Siebecker, Mrs. Burgess, and Messrs. Baker and Zehnter, shows this beyond a doubt. He had been reckless, and used a large portion of her money in his hands as administrator, and he was indebted

to her many thousands of dollars. Perhaps that money could not properly be called the consideration of the deed, for it is not named as such; but it was no doubt a *consideration* that in part induced him to make it. The wish of his father that his mother should have the real property, and which from his last sickness he was unable to carry into effect, we may well suppose, weighed heavily on his mind, for he frequently spoke of it to others, and was an almost irresistible motive to repair the omission of his father, and do justice to his mother. He had nearly all of the estate besides this, and thought his mother needed it much more than he did. He had entered upon the business of his profession with Judge Siebecker, with excellent prospects, as he spoke of this as one reason why she needed it more than he did. These were the inducements that caused him to make the deed. It is hard to believe that he had a single thought of preventing his intended wife from the enjoyment of the property, or to defeat her *expectations* of it. It probably never entered his mind that she had a thought or cared anything about it, or felt any concern about his property or ability to support a family. If Charles L. Dudley had informed the plaintiff at the time that he intended to deed this property to his mother, and had told her his reasons for so doing, as above, can we think for a moment that she would have objected to it, or would not have approved it? There was no fraud in this, in fact or in law, actual or constructive. The learned counsel of the respondent admitted on the trial that Charles Dudley had no intention to defraud his wife in making the deed, and only claimed that the transaction was fraudulent in law because of its *concealment* from the plaintiff. But there was no concealment in fact. The deed was placed on record the same day; and, if the plaintiff wished to be sure of what property he owned before the marriage should take place, she or her friends could have consulted the record.

But the learned counsel contends that *non-information* was concealment.

1. What *expectations* did the plaintiff have of estate in this property that were cut off or defeated by this deed? The defendant held her dower interest in the property, and a life-estate by homestead in the south half or improved portion of it. She was *seized* of that life-estate, and therefore Charles Dudley did not die seized of it, and the plaintiff could have no dower in it. We shall see hereafter that the only expectation she could have was of dower. For this object alone could the deed be declared fraudulent and void, under any circumstances. Charles Dudley had the same right to convey the fee before as after the marriage. It must be the expectation of present possession and enjoyment that is defeated. Her dower in the homestead was not defeated by the deed, for she could have none in it. The defendant had dower in the unimproved portion of the property. That would leave to the plaintiff only one third dower interest in two thirds of that. The whole value of that portion of the lots was $1,300. That is a very small interest at most, hardly sufficient as the basis of expectation. The homestead *descended* to the defendant as a freehold estate for life, and on the death of William Dudley she became seized of it in fact and in law. Sec. 2271, R. S.; 4 Kent's Comm. *26; 1 Washb. Real Prop. 87, 88, and note 5; Id. 346–350; *Holbrook v. Wightman*, 31 Minn. 168. This homestead estate of the defendant excludes the possibility of the plaintiff's dower in those lots. Sec. 2159, R. S. It is an estate in possession and actual occupancy in one alone for life, inconsistent with dower in another person. *Browning v. Harris*, 99 Ill. 456; *Hafer v. Hafer*, 33 Kan. 449; and other cases in appellant's brief. When the deed was made, she could have had no expectation of the enjoyment of the remainder vested in her husband, because that would depend upon too many contingencies. Her husband could

have conveyed the fee after marriage as well as before, and have defeated any right she might have had in it, except her dower. Charles L. Dudley is dead, and now the plaintiff would claim that, if the fee as a remainder had not been conveyed by him to the defendant, she would be entitled to inherit it as his sole heir at law. But this she did not know, and none of the parties knew, when that deed was made. At that time she had no reason to expect but that Charles Dudley would live, and peradventure convey the fee of the homestead or of the other lots. It is her *dower* right only that she lost by this antenuptial deed, and that is all she could recover in this case, under any circumstances.

The leading case in this country on this question is that of *Chandler v. Hollingsworth*, 3 Del. Ch. 99. In that case the chancellor says that such a conveyance will be set aside when it is a fraud on some legal right *existing* at the time. "Its validity cannot be held in suspense, to be determined by *future contingencies*. This would subject titles to distressing uncertainty." "He [the husband] could *after* marriage have effectually disposed of his whole personal estate, and of the inheritance of his real estate, by just such a deed." The chancellor shows conclusively, both on principle and by authority, that the deed in such a case can be set aside only as to the intended wife's right of dower. There is a note appended to this case, of approvals of many legal publications and text-book authors, and the decision has never been disapproved. 3 Washb. Real Prop. 359; 2 Bish. Mar. Wom. § 353; *Youngs v. Carter*, 10 Hun, 194. Nothing, therefore, can be recovered in such a case except the plaintiff's right of dower, and no relief except to set aside the deed only to save that right. The deed is not wholly void. It is void only in respect to the plaintiff's right of dower. *Chandler v. Hollingsworth*, 3 Del. Ch. 99, and other cases cited in appellant's brief. Nearly all the cases cited by the

learned counsel of the respondent are to set aside the deed to save the wife's right of dower, or the husband's curtesy. Such being the law, the interest the plaintiff had in the property conveyed is comparatively very small. It is really a life interest of dower in only two thirds of the vacant lots. This is all she could possibly obtain by setting aside the deed. The plaintiff is only interested in the conveyance as far as she is *injured* by it. Is there enough of this case to support the arbitrary theory of defeated expectations by concealment, which makes such a conveyance a constructive fraud?

2. The only remaining question of law is whether the mere *non-communication* of the fact of the making of the deed establishes the transaction as a legal fraud which cannot be questioned or repelled under any circumstances. It must be admitted that there is a class of cases which hold that nothing can be shown against it except notice or information given to the intended wife, and that non-communication is conclusive evidence of fraud. But all such cases must be understood to have been decided upon their own facts, where there was nothing to repel the presumption of fraud. But in most if not all the recent cases, and in some not so recent, it is held that concealment or the non-existence of communication to the intended wife or husband is not always a constructive fraud, but that it will depend upon the circumstances of each case, as in *England v. Downs*, 2 Beav. 522. There is a very full discussion of this question, also, in *Chandler v. Hollingsworth*, 3 Del. Ch. 99. In *St. George v. Wake*, 1 Mylne & K. 610, it is held that "the court will take into consideration the meritorious object of such conveyance, and the situation of the intended husband in point of pecuniary means." Lord BROUGHAM examines the cases very fully and holds that the principle depended very much on the *dicta* of courts, but that "the cases would even seem to authorize us in taking all the cir-

cumstances of the parties in consideration." The case oftenest referred to as laying down this principle is *Strathmore v. Bowes*, 2 Cox, 28. Mr. Justice BULLER strongly intimated that circumstances might be· considered against holding the settlement void *per se*. In *Gregory v. Winston's Adm'r*, 23 Grat. 102, it is said: "The courts will consider the nature of the provision, the situation of the husband, and any other facts which tend to show that no fraud was intended." In *Taylor v. Pugh*, 1 Hare, 608,. the same doctrine is held. Bigelow, Fraud, 605. The case of *Champlin v. Champlin*, 15 Atl. Rep. (R. I.), 85, is closely in point. "A widow is not entitled to dower in lands conveyed by her deceased husband a few hours before his marriage, without her knowledge, to his son by a former wife, where it appears that he had long before promised the land to the son upon consideration of his working it," and he made improvements on the land, etc. It was held that the circumstances rebutted the inference of fraud. *Firestone v. Firestone*, 2 Ohio St. 415, is much like the above case. In *Hamilton v. Smith*, 57 Iowa, 15, it is held that the secrecy of the conveyance did not necessarily show fraud. In *Cowman v. Hall*, 3 Gill & J. 398, the husband had promised a conveyance to his mother after having received more than his share of his father's estate, and conveyed just before his marriage. It was held that his widow had no dower in the lands conveyed. 1 Scrib. Dower, 592. In *Butler v. Butler*, 21 Kan. 521, the facts were held to rebut the presumption of fraud in such a case.

It would be useless to incumber this opinion with more cases. Many others can be found in appellant's brief. In one of the above cases the placing the deed on record at the time was held to rebut the secrecy of the transaction. The reasonable doctrine seems now to be well established that the deed is not necessarily fraudulent if not disclosed to the intended wife, but that the facts and circumstances may be

taken into consideration as to whether a fraud was actually intended. The old doctrine was utterly unreasonable. Suppose the intended husband was worth millions in city property and owned hundreds of lots, and should convey on the eve of his marriage one or a few of such lots and not disclose it. Would the deed be *ipso facto* void? Yes, by the doctrine of some cases. We conclude, therefore, that the facts and circumstances of this case may be considered in determining whether the giving of that deed was fraudulent. We have sufficiently stated such facts and circumstances, and we cannot believe that Charles L. Dudley had any thought of defrauding the plaintiff as his intended wife. The defendant, *Mrs. Dudley*, already held by far the most valuable interest in the property, and the present loss to the plaintiff was not great. The learned judge of the court below most probably applied the arbitrary principle that the concealment established the fraud. We cannot think that he meant to hold that any fraud was intended, or that the conveyance was not honest, just, and right.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to dismiss the complaint on the merits.